Randolph TATUR, Raymond Kramer, Eugene Dusell, Melvin Wedwick, Robert Martindale, Donald Molstad, Gerald Booth and Phillip J. Schneider, Plaintiffs-Appellants-Petitioners,

v.

David J. SOLSRUD and John Christman, Defendants-Respondents,

John P. KAISER and Alan Rather, Defendants.

Supreme Court

*No. 91–1496.  Oral argument December 1, 1992.—Decided April 20, 1993.*

(Also reported in 498 N.W.2d 232.)

For the plaintiffs-appellants-petitioners there were briefs by *Richard L. Wachowski* and *Thornton, Black, Wachowski & Grosskopf, S.C.*, Eau Claire, and oral argument by *Richard L. Wachowski*.

For the defendant-respondent, David J. Solsrud, there was a brief by *David E. Richie* and *Danielson & Guettinger, S.C.*, Eau Claire and oral argument by *Mr. Richie*.

For the defendant-respondent, John Christman, there was a brief by *Susan M. Zabel* and *Coe, Dalrymple, Heathman, Coe & Zabel, S.C.*, Rice Lake and oral argument by *Susan M. Zabel*.

DAY, J.   This is a review of a published decision of the court of appeals[1] which affirmed an order of the circuit court for Rusk County, Honorable Roderick A. Cameron, Judge, dismissing the plaintiffs' defamation claim. The circuit court granted summary judgment in favor of the defendants, who allegedly misrepresented the plaintiffs' voting records while the plaintiffs were running for reelection to the Rusk County Board. This case presents the issue of whether the alleged misrepresentations concerning the plaintiffs' voting records are capable of a defamatory meaning.

---

[1] *Tatur v. Solsrud*, 167 Wis. 2d 266, 481 N.W.2d 657 (Ct. App. 1992).

The plaintiffs were incumbent candidates in the 1988 election for the Rusk County Board. Within four days before the election, the defendants composed and distributed letters to the plaintiffs' constituents. According to the plaintiffs, these letters contained three types of misrepresentations: (1) how the plaintiffs voted on specific resolutions; (2) the effect of specific resolutions; and (3) the procedural and factual background of specific resolutions. The defendants also placed a full page advertisement, containing essentially the same information as the letters, in a weekly newspaper.

The plaintiffs complained to the Rusk County District Attorney that the defendants' misrepresentations violated sec. 12.05, Stats. 1987-88,[2] which carries a penalty of not more than $1,000, or imprisonment not more than six months or both.[3] The plaintiffs then filed this action and the defendants moved for summary judgment. Although the circuit court originally denied the motion, the circuit court reversed itself on reconsideration and granted the defendants' motion for summary judgment. The plaintiffs appealed and the court of appeals affirmed the circuit court in a split decision on the grounds that the alleged misrepresentations are not capable of a defamatory meaning. This court then granted the plaintiffs' petition for review.

---

[2] **12.05 False statements affecting candidates.** No person may knowingly make or publish, or cause to be made or published, a false representation pertaining to a candidate which is intended or tends to affect voting at an election.

[3] According to the plaintiffs, the Rusk County District Attorney advised them to forward their complaint to the Wisconsin Attorney General, who declined to pursue the matter and suggested that the plaintiffs institute a civil suit.

■ On review, the plaintiffs argue that the alleged misrepresentations contained in the letters are capable of a defamatory meaning. "It is the function of the court as a matter of law to determine whether a communication is capable of a defamatory meaning." *Lathan v. Journal Co.*, 30 Wis. 2d 146, 153, 140 N.W.2d 417 (1966); *See also Schaefer v. State Bar*, 77 Wis. 2d 120, 122, 252 N.W.2d 343 (1977). The question on review, therefore, is whether the court of appeals was correct in holding that, as a matter of law, the alleged misrepresentations of the plaintiffs' voting records are not capable of a defamatory meaning.

■ Neither the plaintiffs' amended complaint nor the plaintiffs' brief to this court sets forth the particular statements alleged to be defamatory. Rather, the plaintiffs merely attached the eight letters to the complaint and cited three "examples"[4] of "defamation" in their brief. The court of appeals correctly noted that the plaintiffs' complaint was not in accordance with sec. 802.03(6), Stats., which requires that "in an action for libel or slander, the particular words complained of shall be set forth in the complaint." On appeal, the defendants did not raise the issue of the plaintiffs' non-compliance with sec. 802.03(6). Like the court of appeals, we assume that all the statements contained in the letters are false

---

[4] While the plaintiffs claim that the "letters are replete with such intentional inaccuracies," they set forth the following examples: (1) one letter states that plaintiff Schneider voted for a resolution abolishing the position of Undersheriff and creating the position of Chief Deputy Sheriff; (2) one letter states that a resolution which the plaintiffs voted for would create a $20,000 per year position; and (3) one letter states that Rusk County would have to borrow $500,000 to reconstruct a dam.

and examine each letter in its entirety for a statement which is capable of a defamatory meaning. We find none.

This court quoted with approval the test for defamation set forth in the Restatement. *See Ranous v. Hughes*, 30 Wis. 2d 452, 460, 141 N.W.2d 251 (1966) (citing *Lathan*, 30 Wis. 2d at 153). The Restatement provides that "[a] communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977). Furthermore, "[i]n determining whether the language is defamatory, the words must be reasonably interpreted and must be construed in the plain and popular sense in which they would naturally be understood in the context in which they were used and under the circumstances they were uttered." *Frinzi v. Hanson*, 30 Wis. 2d 271, 276, 140 N.W.2d 259 (1966) (citing *Meier v. Meurer*, 8 Wis. 2d 24, 98 N.W.2d 411 (1959)).

In applying the test set forth above, we conclude that the letters attached to the plaintiffs' complaint do not contain any statements capable of a defamatory meaning. We agree with the court of appeals characterization that "most of the statements concern how the plaintiffs voted on issues regarding expenditures and taxes." None of the issues mentioned in the letter, however, are of the nature that a vote on one side or the other could harm the reputation of the voting official as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

Although the plaintiffs assert that the misrepresentations deterred electors from voting for them, this court held that a statement which is not libelous on its face is not made so by the fact that the statement causes some

741

people to vote against the plaintiff. *Frinzi*, 30 Wis. 2d at 278. In *Frinzi*, the plaintiff, a candidate for Governor, alleged that the defendant stated that "Dominic Frinzi, by stating that he is considering running as an independent has thrown away all pretense at being a Democrat." *Id.* at 274. This court held that the statement was not capable of a defamatory meaning and stated, "[i]t might be argued that such statement would cause some Democrats not to vote for Frinzi in the primary, but unless the statement is libelous on its face it is not made so because of the effect or damage it might have on Frinzi's candidacy." *Id.* at 278.

We do not hold that a misrepresentation of a voting record can never be capable of a defamatory meaning. We do hold that a plaintiff seeking to prove defamation must show more than the fact that a misrepresentation caused the candidate to lose votes. Specifically, a plaintiff must show that the misrepresentation was defamatory on its face. The plaintiffs failed to do so in this case.

Our holding comports with this court's decision in *D'Amato v. Freeman Printing Co.*, 38 Wis. 2d 589, 157 N.W.2d 686 (1968). In *D'Amato*, the plaintiff, a former district attorney running for the office of county judge, alleged that the defendant made the following statements: (1) the plaintiff solicited financial aid in violation of the corrupt practices law; (2) the plaintiff pretended on his campaign posters that he was already a judge; and (3) plaintiff wrongfully neglected to perform his duties as district attorney so that prostitution, gambling and liquor laws were openly violated. Although this court held that the statements were capable of a defamatory meaning, this court did not base its holding on the fact that the statements caused some voters to refrain from voting for the plaintiff. Rather, this court based its hold-

ing on the finding that the statements lowered the plaintiff's reputation in the community. Thus, this court's holding in *D'Amato* did not change the rule that a defamatory communication must be libelous on its face. Since we conclude that the alleged misrepresentations in this case are not capable of lowering the plaintiffs' reputation in the community or deterring third persons from associating or dealing with them, our holding does not conflict with the holding *D'Amato*.

The plaintiffs cite *Fong v. Merena*, 66 Hawaii 72, 655 P.2d 875 (1982). In *Fong,* the plaintiff, a member of the legislature, alleged that the defendant falsely accused him of voting for a pension bill which was the subject of much public discussion and opposition. The Hawaii Supreme Court summarily held, without discussion, that the publication "was reasonably susceptible to a defamatory interpretation," but went on to find that the plaintiff did not prove the required element of actual malice. *Id.* at 74. Since the *Fong* case lacks any analysis or reasoning to support the conclusion that the statement at issue was capable of a defamatory meaning, we do not find it persuasive.

We reject the plaintiffs' argument that a violation of sec. 12.05, Stats. constitutes defamation per se in the same manner that a violation of a safety statute constitutes negligence per se. For the violation of a safety statute to constitute negligence per se, a plaintiff must show: (1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability. *Walker v. Bignell*, 100 Wis. 2d 256, 268–69, 301 N.W.2d 447 (1981). When determining whether there is some

expression of legislative intent that the statute become a basis for civil liability, the court must keep in mind that "[s]tatutes are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed therein." *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 74, 307 N.W.2d 256 (1981). Since neither the language nor the legislative history of sec. 12.05, Stats, shows any intention to change the common law of defamation, we conclude that sec. 12.05, is not a basis for civil liability.

Finally, the plaintiffs argue that our holding will leave them with no remedy. Section 12.05, Stats., however, provides a criminal penalty for "a false representation pertaining to a candidate which is intended or tends to affect voting at an election." But the decision to prosecute a possible violation of a criminal statute is ordinarily within the discretion of the District Attorney or the Attorney General. *See State v. Annala*, 168 Wis. 2d 453, 472–475, 484 N.W.2d 138 (1991).

In conclusion, we hold that the letters attached to the plaintiffs' complaint do not contain any statements which are capable of a defamatory meaning. Furthermore, we hold that sec. 12.05, Stats., which provides a criminal penalty, does not change the common law of defamation and is not a basis for civil liability.

*By the Court.*—The decision of the court of appeals is affirmed.