LUTHEY, Respondent, vs. KRONSCHNABL, Appellant.

*December 1, 1941—January 13, 1942.*

For the appellant there was a brief by *Harold W. Krueger,* and oral argument by *James H. Plier,* both of Oconto.

*Richard J. Ballman* of Green Bay, for the respondent.

FRITZ, J. The plaintiff, A. C. Luthey, bases his action for libel on articles published on December 12 and 26, 1940, in The Forest Republican, a newspaper published by the defendant Herman L. Kronschnabl. The allegations in plaintiff's complaint, as far as material on this appeal, are to the following effect. From 1930 to 1934, plaintiff was a member of Forest county highway commission, which purchased machinery and equipment for the county from various manufacturers. Between August, 1939, and November, 1940, much publicity was given in Forest county to alleged fraudulent tax-land deals, by which certain county officials and members of the county board were alleged to have profited by fraudulent tax certificates and tax titles purchased from the county, and actions which it brought against them and their bondsmen in relation to the fraudulent deals were settled by the payment of $17,000 to the county in November, 1940. Defendant, in connection with commenting on this settlement in an editorial published on December 12th, stated,—

"Now that this case is disposed of lets hope that the members of the Forest county board of supervisors will in the future keep free from petty graft. We all know that in the past members of the county highway committees made rake-offs by buying road machinery. As a former member once told us when we asked him if machinery agents ever tempted him. His answer was that one had a hard time to keep the agents from stuffing money into your pocket. . . ."

On December 19th defendant stated in an editorial headed "We are Sorry,"—

"In the editorial last week where the Republican said that in the past members made a rake-off when purchasing road machinery. Someone immediately got the idea that we meant Selmer Jacobson, who was a former member of the highway committee. We wish to make this apology to Mr. Jacobson that we didn't have him in mind. . . . Our reference to highway committees was many years ago and not to present members."

After that editorial was published plaintiff sent a letter to defendant requesting a retraction as to himself and stated in that connection,—

"I was on the highway committee many years ago—namely ten years ago. If you did not refer to me then I shall expect you to so state in your next issue. My reason for this is that several persons have gotten the idea that I am one of the members you refer to as taking a rake-off on the machinery, because they have mentioned to others that you refer to me as one of the guilty committeemen."

Defendant published that letter on December 26, 1940, in connection with an editorial stating,—

"In regard to his letter we had at first not intended to reply to it, but then after attending Christmas Eve services at Wakefield, Michigan, we heard one of the best sermons preached by a missionary which done us a lot of good. Now if Mr. Luthey had attended a Christmas Eve service in any one of the Crandon churches we are sure he would have gotten a lot of good out of it and felt a whole lot better than he did. Now we are going to make our reply mighty short. To be sure we have no proof that you or any other one who had been a member of the Forest county highway committee has ever received a cent commission or rake-off. . . . The machinery salesmen who usually dish out the money never hire a hall and invite the public to see that a commission is ever paid to one who can get them a sale. That is done behind closed doors or some place where the general public will not get wind of it."

Plaintiff alleges, as innuendo, that by those statements defendant meant and intended—

"to charge that plaintiff, while in office as a member of the highway commission, unlawfully and in violation of his oath of office received money illegally and defrauded said Forest county by accepting secret rebates and commissions from the dealers in highway equipment from whom Forest county highway commission had purchased road-building machinery and equipment;" and also "to charge the plaintiff with dishonesty in the purchasing of road-building equipment while on the highway committee," and "with carrying on such dishonest and illegal deals secretly, so as not to afford an opportunity to any officer or citizen of the county to directly prove such illegal acts."

Plaintiff alleges further that the statements above quoted from the editorial of December 26th were published by defendant wilfully and maliciously with intent to defame and injure plaintiff in his good name, reputation, and position, and to hold him up to public contempt, scorn, shame, and ridicule; and that the charges therein are false and have no foundation whatever in fact, but are created and based upon malicious conjecture on the part of defendant.

A second cause of action is based by plaintiff on the statement in the editorial of December 26th, which reads,—

"Now if Mr. Luthey had attended a Christmas Eve service in any one of the Crandon churches we are sure he would have gotten a lot of good out of it and felt a whole lot better than he did."

Plaintiff alleges, as innuendo, that by this statement defendant meant that plaintiff "is a man of such general lack of integrity and Christian virtue as to require the influence of a church service upon him;" and plaintiff further alleges that defendant thereby intended and did charge that plaintiff was unchristian in his manner of living and carrying on his business, and that the article was published and circulated mali-

ciously to ridicule, shame, and hold up plaintiff and his family to public scorn.

The defendant contends, in support of his demurrer to the allegations in the first cause of action, that neither the plaintiff nor any ascertainable person is designated in the alleged defamatory statements as the party to whom they are applicable, and that therefore they cannot be considered to be libelous as to plaintiff in view of the well-established rules that defamatory words are not libelous unless they refer to some ascertained or ascertainable person; and in order to entitle a plaintiff to recover in an action for libel he must be the particular ascertainable person to whom the libelous words do refer (*Schoenfeld v. Journal Co.* 204 Wis. 132, 235 N. W. 442; *Williams v. Journal Co.* 211 Wis. 362, 372, 247 N. W. 435; *Arnold v. Ingram,* 151 Wis. 438, 138 N. W. 111; *Kassowitz v. Sentinel Co.* 226 Wis. 468, 277 N. W. 177; *Helmicks v. Stevlingson,* 212 Wis. 614, 250 N. W. 402); and such certainty as to the person who is defamed must appear from the words themselves, for no innuendo can render certain that which is uncertain. Newell, Slander and Libel (4th ed.), p. 249, § 200; *Helmicks v. Stevlingson, supra.*

Defendant's contention must be sustained. There is no designation of plaintiff or reference to him or any particular person as the one to whom there are applicable the defamatory statements in the editorial of December 12th, that—

"In the past members of the county highway committees made rake-offs by buying road machinery. As a former member once told us . . . one had a hard time to keep the agents from stuffing money into your pocket."

Neither is there any such designation of or reference to plaintiff in the statements in the editorial of December 26th, that—

"The machinery salesmen who usually dish out the money never hire a hall and invite the public to see that a commission is ever paid to one who can get them a sale. That is done be-

hind closed doors or some place where the general public will not get wind of it."

Although the latter editorial was partly in reply to plaintiff's letter and states that "we have no proof that you or any other one who had been a member of the Forest county highway committee has ever received a cent commission or rakeoff," this statement did not designate plaintiff or refer to him in any such manner so as to render him an ascertainable person to whom the defamatory statements were applicable. Consequently, the defamatory statements upon which the first cause of action is based were not libelous as to plaintiff.

The plaintiff bases his second cause of action upon that portion of the editorial of December 26th which reads,—

"Now if Mr. Luthey had attended a Christmas Eve service in any one of the Crandon churches we are sure he would have gotten a lot of good out of it and felt a whole lot better than he did."

Defendant contends that the sense and meaning apparent from those words standing alone, without the innuendo, do not in any way injure plaintiff's character, or subject him to ridicule or contempt; and that no innuendo can alter the sense or supply by innuendo a meaning which is not there. These contentions must likewise be sustained. As we held in *Hoan v. Journal Co.* 238 Wis. 311, 298 N. W. 228, 233, the court must determine, as a matter of law, whether the language complained of as defamatory is capable of the meaning ascribed to it in the complaint. In the case at bar, the usual, ordinary, and natural meaning of the words charged to be defamatory in the second cause of action does not admit, as plaintiff claims, of the innuendo that he is a man of such general lack of integrity and Christian virtue as to require the influence of church service upon him. On the contrary, the ordinary and natural meaning of the simple and unambiguous words complained of is but their plain meaning that if plaintiff attended

such service "he would have gotten a lot of good out of it and felt a whole lot better than he did." The statement that consequences as usual and natural and commendable as these would have been experienced by plaintiff if he had attended the service cannot reasonably be deemed to have subjected him to ridicule, shame, public scorn, or injury to his character. Consequently, the statement was not defamatory and affords no basis for libel. It follows as to both of the alleged causes that the court erred in overruling defendant's demurrer.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order sustaining defendant's demurrer.